UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HENRIETTA JOHNSON, MICHAEL ROBINSON, and YVONNE BOOKER as next friend of C.B., | )<br>)<br>) |
| Plaintiffs, | ) Cause No.: 4:14-cv-0286<br>)<br>) |
| v. | )<br>) |
| CITY OF HAZELWOOD, EDWIN G. CALSTROM, CARL WOLF, POLICE SERGEANT NORMAN MARS, P.O. DANIEL KENNER, P.O. JASON CORSON, AND LIEUTENANT MICHAEL BRADY, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants, | )<br>) |
| and | )<br>) |
| LATASHA JOHNSON, for herself and as Next Friend of A.D.J., A.T.J., T.J.J. and T.F.W., the surviving minor children of Antonio L. Johnson, deceased, | )<br>)<br>)<br>)<br>) |
| Intervening Plaintiffs, | )<br>) |
| v. | )<br>) |
| CITY OF HAZELWOOD, NORMAN MARS, DANIAL KENNER, and JASON CORSON, | )<br>)<br>) |
| Defendants to Intervening Plaintiffs' Petition. | )<br>) |

## *DEFENDANTS' ADDITIONAL STATEMENTS OF UNCONTROVERTED FACTS IN OPPOSITION TO ORIGINAL PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT*

COME NOW Defendants, City of Hazelwood Mayor Matthew Robinson, former City of Hazelwood City Manager Edwin G. Carlstrom (improperly named), former Hazelwood Police Chief of Police Carl Wolf, the City of Hazelwood, Hazelwood Police Sergeant Norman Mars, Hazelwood P.O.s Daniel Kenner (improperly named), Jason Corson, and Police Lieutenant Michael Brady) (collectively, the "Original Defendants"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7 - 4.01, and for their Additional Statements of Uncontroverted Facts in Opposition to Original Plaintiffs' Motion for Summary Judgment (Doc. No. 17–19), state:

1. Prior to his encounter with police, Decedent had been traveling at about 15-20 miles per hour, crossing the centerline several times, and driving into oncoming (northbound traffic). Ex. A, Hazelwood Police Report 2013-02813.

2. An eyewitness by the name of Mark Lynn Wilson believed Decedent to be driving while intoxicated, and reported the same to Sergeant Norm Mars. *Id.*

3. Mr. Wilson had followed Decedent for approximately six miles and continued to report Decedent's location to the police dispatcher. *Id.*

4. Decedent wobbled a little after he exited his vehicle. Ex. A, Hazelwood Police Report 2013-02813.

5. Witness Eric Rapa asked Decedent if Decedent was okay and if he could help him. *Id.* Decedent responded that he did not know what was going on. *Id.*

6. Decedent then gave his permission for Mr. Rapa to move his vehicle off the roadway. *Id.*

7. Sgt. Mars responded to a suspected drunk driver to Aubuchon Road in Hazelwood, MO. Ex. A, Hazelwood Police Report 2013-02813.

8. The scene was rural in nature, which typically has a longer response time for assist units to arrive. *Id.*

9. Upon Sgt. Mars' arrival, Mr. Rapa informed Sgt. Mars that he was only moving the vehicle out of the roadway and that the Decedent had been driving the vehicle. *Id.*

10. Decedent stated he was just "out here," had bloodshot eyes, dilated pupils, resting nystagmus, rigid muscle tone, and was sweating profusely. Ex. A, Hazelwood Police Report 2013-02813.

11. The Decedent appeared intoxicated and impaired by a dissociative anesthetic (suspected PCP). *Id.*

12. Decedent was intoxicated and under the influence of PCP. *See id.*; Ex. D, 2013-4672 Exam Case.

13. Those who are impaired by PCP are extremely strong, violent, and dangerous. *Id.*

14. Decedent mumbled and slurred his speech, stating, "I just got intoxicated, that's all." Ex. A, Hazelwood Police Report 2013-02813.

15. The Decedent stated he was "trying to figure out where [he] was at" and that he "was getting turned around." *Id.*

16. The Decedent placed his arms sideways away from his body, where they were straight and his hands were level with his shoulders, as if he were going to do a "windmill." *Id.*

17. Sgt. Mars first placed a handcuff on Decedent's right wrist and moved his right arm behind his back. Ex. A, Hazelwood Police Report 2013-02813.

18. Sgt. Mars stood behind and to the right of Decedent in an attempt to maintain a tactical advantage over the Decedent. *Id.*

19. Sgt. Mars then advised Decedent to move his left arm behind his back. *Id.*

20. Decedent would not comply. *Id.*

21. Sgt. Mars told him three times to bring his hand behind his back. *Id.*

22. Decedent again would not comply. *Id.*

23. Sgt. Mars advised Decedent he was failing to comply and ordered Decedent a fourth time to place his left hand behind his back so he could be handcuffed. *Id.*

24. Decedent failed comply a fourth time. *Id.*

25. Sgt. Mars pulled Decedent's right arm down toward the ground, pulling him off balance and Decedent then fell to the ground. *Id.*

26. Sgt. Mars immediately moved Decedent's right arm behind his back, and then placed his hand on Decedent's left arm. *Id.*

27. Sgt. Mars brought Decedent's left arm back, at which time Decedent was handcuffed. *Id.*

28. After speaking with Messrs. Wilson and Rapa, Sgt. Mars assisted Decedent into a seated position to prevent any chance of positional asphyxiation. Ex. A, Hazelwood Police Report 2013-02813.

29. Decedent was 6'05'' and weighed approximately 200 pounds at the time of the subject incident. *Id.*

30. Due to Decedent's physical stature, he advised Decedent to sit down until a police vehicle with a cage could arrive. *Id.*

31. Sgt. Mars took Decedent's phone, turned it off, and placed it in Decedent's pocket. *Id.*

32. As Decedent was squatting to sit, he quickly moved his hands to the back of his feet and tried to step over the handcuffs so his hands would be to the front of his body. *Id.*

33. Johnson has very long arms, and due to his athletic build, apparent flexibility and suspected impairment on PCP, he could have very easily moved his hands to his front. *Id.*

34. Sgt. Mars had the reasonable apprehension that Decedent was either anticipating fleeing or assaulting Sgt. Mars. *Id.*

35. Sgt. Mars pushed Decedent off balance, and Decedent fell to his side. Ex. A, Hazelwood Police Report 2013-02813.

36. Sgt. Mars mounted Decedent to restrain and move Decedent's hands to the small of his back. *Id.*

37. Decedent's strength was incredible and Sgt. Mars could not get his hands in the proper position at that time. *Id.*

38. Decedent, on his side with his legs curled up, grabbed Sgt. Mars' legs and attempted to pull him off balance. *Id.*

39. Decedent then attempted to grab Sgt. Mars' testicles. *Id.*

40. Sgt. Mars had the reasonable apprehension that Decedent would try to harm or kill Sgt. Mars if he could get his hands to the front of his body. *Id.*

41. In an effort to bring the event to a quick conclusion with minimal use of force, Sgt. Mars yelled "Taser, Taser, Taser," and used his Taser to drive-stun Decedent. *Id.*

42. After the Taser cycle finished, Sgt. Mars ordered Decedent to place his hands behind his back. Ex. A, Hazelwood Police Report 2013-02813.

43. Decedent refused. *Id.*

44. Sgt. Mars deployed his Taser again in order to gain compliance from Decedent. *Id.*

45. Decedent pulled away while attempting to move his hands in front of him and kicked Sgt. Mars in the upper legs, groin, and abdomen. *Id.*

46. Sgt. Mars ordered Decedent to quit kicking and to put his hands behind his back, but Decedent continued to fight. *Id.*

47. It took everything Sgt. Mars had to stay with the Decedent to prevent him getting his hands to the front of his body. *Id.*

48. The Taser proved to be ineffective to gain compliance from Decedent. Ex. A, Hazelwood Police Report 2013-02813.

49. Sgt. Mars then struck Decedent on the side of the upper right arm in the large muscle mass to gain compliance and cease Decedent's assault on Sgt. Mars. *Id.*

50. Sgt. Mars struck Decedent a three or four more times with the asp baton, ordering Decedent to stop fighting and to place his hands behind his back. *Id.*

51. Decedent ignored Sgt. Mars' commands and kicked Sgt. Mars repeatedly. *Id.*

52. Sgt. Mars struck Decedent three or four more times, ordering Decedent to stop so he would not be harmed. *Id.*

53. Decedent ignored the commands and continued to assault Sgt. Mars. *Id.*

54. The asp baton strikes to the arms were ineffective. Ex. A, Hazelwood Police Report 2013-02813.

55. Sgt. Mars therefore struck Decedent on the outside of his right leg on the common peroneal nerve to stop the attack, while ordering Decedent to move his hands behind his back. *Id.*

56. Sgt. Mars, pleading with Decedent to stop resisting, informed Decedent he would stop striking when Decedent stopped resisting and placed his hands behind his back. *Id.*

57. Sgt. Mars had the reasonable apprehension that if Decedent moved his hands to the front of his body, he would run off into the fields, woods, or river, thereby placing his life in danger. *Id.*

58. Decedent could have alternatively continued to attack Sgt. Mars. *Id.*

59. Police Officer Danial Kenner arrived to assist, and attempted to place Decedent's arms behind his back. Ex. A, Hazelwood Police Report 2013-02813.

60. Decedent was too strong, and Officer Kenner and Sgt. Mars were unsuccessful in moving Decedent' arms behind his back. *Id.*

61. Decedent grabbed Officer Kenner's hand and continued to kick Sgt. Mars. *Id.*

62. Officer Kenner fell forward, landing on Decedent's legs. *Id.*

63. Decedent again moved his hands toward his feet. *Id.*

64. Sgt. Mars fired his Taser probes into Decedent's abdomen and left arm. *Id.*

65. After each deployment of a Taser cycle, Decedent was given the chance to comply. *Id.*

66. Decedent refused and continued to attempt to move his hands to the front of his body. *Id.*

67. Officer Kenner then fired his Taser prongs into Decedent's back. *Id.*

68. After his Taser cycle was complete, Decedent continued to move his hands toward his feet. *Id.*

69. Police Officer Jason Corson arrived. Ex. A, Hazelwood Police Report 2013-02813.

70. Decedent continued to be combative and attempted to move his hands to the front of his body. *Id.*

71. Officer Kenner (with the assistance of Officer Corson) attempted to place his asp baton between Decedent's arms and the back of Decedent's legs to force Decedent's hands behind his back. *Id.*

72. Sgt. Mars assisted by grabbing Decedent's shoulders and pulling Decedent forward in an effort to straighten Decedent's legs. *Id.*

73. Sgt. Mars placed his left knee on the top of Decedent's back. *Id.*

74. Sgt. Mars grabbed the asp baton, and the three officers were finally able to move Decedent's hands to the small of his back. *Id.*

75. Decedent made no further attempts to move his hands to the front of his body, and no further use of force was employed. *Id.*

76. Sgt. Mars sustained a six inch scratch on the top of his forearm, fatigue, muscle ache, and knee pain. *Id.*

77. A computer check of Antonio L. Johnson revealed his Missouri driver license was revoked. Ex. A, Hazelwood Police Report 2013-02813.

78. A check of Johnson's driver license record revealed an Administrative Alcohol Revocation (2/22/13), Driving While Intoxicated (8/28/10), Driving While Suspended/Revoked (3/8/01 ), Chemical Action (9/2/01 ), Driving While Intoxicated (12/2/99), Driving While Suspended/Revoked (12/14/96), Driving While Suspended/Revoked (10/27/96), Driving While Suspended/Revoked (12/19/95), Driving While Suspended/Revoked (7/26/94) and, Driving While Suspended/Revoked (9/27/93). Decedent had an extensive criminal history with charges including, but not limited to, Sale of a Controlled Substance (F), Driving While Intoxicated, Driving While Intoxicated (drug intoxication), Trespassing, numerous counts of Driving While Suspended/Revoked and traffic charges. *Id.*

79. On July 9, 2013, Plaintiff Latasha Johnson called Lieutenant Michael Brady and informed him she was aware Decedent had taken PCP the previous week. Ex. A, Hazelwood Police Report 2013-02813.

80. She admitted she had not yet seen Decedent that day, as he was coming to pick her up for their fourteenth anniversary. *Id.*

81. On July 10, 2013, Plaintiff Latasha Johnson informed Detective Wilcox Decedent would use PCP, but did not use it around her. *Id.*

82. The Assistant Medical Examiner, Gershom Norfleet, M.D., ruled the manner of death to be an accident. Ex. D, 2013-4672 Exam Case, p. 12.

83. Further, Dr. Norfleet ruled the immediate cause of death to be multiple organ failure secondary to hypotension, but to hypertensive heart disease exacerbated by struggle and phencyclidine intoxication. *Id.* at p. 12.

84. The Medical Examiner's Report also references a "Transfer Diagnosis [of] Respiratory Failure due to PCP Toxicity." *Id.* at p. 3.

WHEREFORE, the Original Defendants respectfully pray that this Court deny the Original Plaintiffs' Motion for Summary Judgment, and for such other and further relief as this Court deems just and proper.

/s/Peter J. Dunne
Peter J. Dunne   #31482
Robert T. Plunkert   #62064
PITZER SNODGRASS, P.C.
Attorney for Defendants and Defendants to
Intervening Plaintiffs' Petition
100 South Fourth Street, Suite 400
St. Louis, Missouri 63102-1821
(314) 421-5545

(314) 421-3144 (Fax)  
Email: dunne@pspclaw.com  
Email: Plunkert@pspclaw.com

A copy of the foregoing filed electronically with the Clerk of the Court this 19th day of September, 2014, to be served by operation of the Court's electronic filing system upon the following: **Freeman R. Bosley, Jr.**, Attorney for Plaintiff, at bosleyllc@sbcglobal.net and **Michael Schwade** at Michael.schwade@gmail.com.

/s/Peter J. Dunne

Dunne\Gerken
September 19, 2014